**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUMNER HOME FOR THE AGED, Respondent.**

No. 77–1036.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1979.

Decided June 5, 1979.

---

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Aileen Armstrong, David Zorensky, Washington, D. C., Bernard Levine, Director, Region 8, N. L. R. B., Cleveland, Ohio, for petitioner.

Edward C. Kaminski, Walter E. DeBruin, John N. Childs, Buckingham, Doolittle & Burroughs, Akron, Ohio, for respondent.

Before EDWARDS, Chief Judge, and KEITH and MERRITT, Circuit Judges.

EDWARDS, Chief Judge.

In this case the National Labor Relations Board seeks enforcement of an order reported at 226 N.L.R.B. No. 155 (1976), which, among other things, required respondent employer to offer in contract form certain terms said to have been agreed upon before the union began a strike against Respondent and to draft proposals on other issues where there had been a pre-strike impasse as to which the union has now offered to agree to anything the company desires.

A union[1] won a consent election in Respondent's Home for elderly people and was certified as the collective bargaining agent. After several months of collective bargaining which left 10 major issues unresolved, the union struck on April 19, 1975. The strike was broken and on August 20, the union called it off. Meanwhile the strikers had been replaced. Fourteen of the 31 strikers then sought re-employment but none was rehired. The union sought to resume negotiations and DeBruin, the lawyer for the Home, agreed to meet on September 18. At that meeting, Hennigin, the union's representative, asked for the names and addresses of the employees, many of whom were newly hired. The Board found that DeBruin agreed to this request. Hennigin also proposed that DeBruin write out a proposed contract incorporating the terms which had been agreed on prior to the strike and proposing any terms the Home wanted as to the 10 major issues still in dispute. He added that the union "would agree in advance to any proposal" the Home made. Hennigin testified that DeBruin agreed to draft such an agreement.

No draft agreement was ever submitted by the Home and DeBruin was replaced in negotiations by another lawyer, Kaminski, who corresponded with Hennigin but never met with him. With this background of facts, the union filed an unfair labor practice complaint.

After a hearing on the unfair labor practice complaint, the Administrative Law

---

1. Local No. 698 Retail Clerks International Association, AFL–CIO.

Judge entered a proposed order which provided in applicable part the following:

2. Take the following affirmative action which is necessary to effectuate the policies of the Act:

(a) Upon request, forthwith execute and sign the collective bargaining contract agreed to on September 18, 1975, and give retroactive effect to the terms and conditions of the contract from September 18, 1975, with interest at 6 percent per annum for the loss of any benefits which would have accrued to the employees under the contract the Respondent refused to sign.

(b) If no such request is made, then, upon request, bargain collectively with Retail Clerks International Association, Local No. 698, AFL–CIO, as the exclusive representative of the employees in the appropriate unit and, if an understanding is reached, embody such understanding in a signed contract.

The Board's decision and order has recited the following facts and conclusions which vary to some important degree from those of the Administrative Law Judge.

The Administrative Law Judge found that during a September 18, 1975, meeting following the Union's unsuccessful strike Union Representative George Hennigin informed Respondent's attorney, George DeBruin, that the Union would agree in advance to any forthcoming proposals on the 10 or so unresolved issues between the parties. In effect, Hennigin offered to let the Respondent "write its own ticket." DeBruin, in turn, agreed that he would type up and send to the Union a complete contract including all agreements reached prior to the strike and the Respondent's proposals on the unresolved items. Thereafter, despite the Union's repeated demands, the Respondent failed to furnish the Union with either a complete proposed draft agreement or with specific proposals on any of the 10 unresolved items.

On these facts the Administrative Law Judge concluded that Respondent had unlawfully refused to bargain by failing to reduce to writing and execute an agreed-upon contract. The Administrative Law Judge recommended that Respondent's unlawful conduct be remedied by requiring Respondent, upon request, to sign the bargaining contract agreed to on September 18, 1975, and to give retroactive effect to the terms and conditions of the contract from that date.

To the extent that the Administrative Law Judge found and remedied herein an *H. J. Heinz* [*H. J. Heinz v. NLRB,* 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 (1941)] type violation, we must disagree with his finding and recommended remedy. Contrary to the Administrative Law Judge, we find on this record no basis for concluding that agreement was reached on September 18 on the substantive terms of a collective-bargaining agreement.

Although it is settled that the technical rules of contract law are not necessarily controlling in cases arising under the Act, it is plain on the facts of the instant case that the parties never reached final agreement with its concomitant obligation to reduce their agreement to writing and sign it. Thus the record reveals that when the parties met for the last time on September 18 the unresolved items that separated them from final agreement included union shop, checkoff, wages, health and welfare insurance, employee Christmas bonus, management rights, and the term or duration of the contract. Not only was there no agreement on these and other items, but so far as this record shows the Respondent had never presented any specific contract proposals with respect to these matters. Thus Hennigin, responding to the Home's October 20 suggestion that the Union submit a "paste up" of the agreements reached by the parties prior to September 18, wrote to Respondent's counsel:

I am unable to provide you with Sumner Home's position on these [unresolved] issues in the contract language because *it was never proposed.* Mr. DeBruin was to make such a proposal on these issues as per our September 18, 1975 meeting. [Emphasis supplied.]

Absent any proposals on the table on the several major open issues between the parties we fail to see how the promises exchanged on September 18, on the Union's part to accept any proposals that might be made and on the Respondent's part to make such proposals, can be taken as having created a complete bargaining agreement requiring only that the parties reduce their agreement to writing and sign it. Simply put, until the Respondent submitted its proposals to the Union there could be no agreement on the substantive terms of a collective-bargaining contract. Hence there could be no finding of a violation predicated solely on a failure to reduce to writing and execute an agreed-upon contract.

In view of our findings above, we shall modify the Administrative Law Judge's recommended Remedy to require Respondent, upon request, to furnish the Union with a complete draft contract including both the agreements reached by the parties in negotiations prior to September 18, 1975, and Respondent's proposals on all the items that were unresolved on and after that date.

26 N.L.R.B. at 976–77 (Footnotes omitted.)

Thereafter the Board "modified" the Administrative Law Judge's proposed order as follows:

> (a) Upon request, furnish the Union with a complete proposed collective-bargaining agreement pursuant to the understanding reached with the Union on September 18, 1975, and, if the Union agrees to such proposed contract, sign the contract.

*Id.* at 977.

The record amply supports the Administrative Law Judge and the Board in finding facts sufficient to establish the NLRB's jurisdiction over this controversy, *see Glen Manor Home v. NLRB,* 474 F.2d 1145 (6th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973). The same may be

said about the portion of the Board's order requiring the Respondent to furnish the names and addresses of its employees to the union. *NLRB v. Pearl Bookbinding Co., Inc.,* 517 F.2d 1108 (1st Cir. 1975).

The same may likewise be said concerning the Board's conclusion that Respondent's "entire course of conduct throughout the period from and after September 18, 1975 was lacking in a good faith desire to arrive at a final agreement in its negotiations with the union." Despite this approved finding of fact, we cannot, however, approve the remedy concerning the contract as presently ordered by the Board.

As paragraph # 2(a) of the Board's order is written, it appears to require Respondent to incorporate terms described as agreed upon prior to the strike. It also requires the Respondent to make written proposals upon all of the contract terms which both parties to negotiations agreed have never been settled. These represent some of the most vital features of a collective bargaining agreement: union shop, checkoff, a seventh paid holiday, jury duty pay, wages, credit union deductions, health and welfare insurance, employees' Christmas bonus, management's rights, and term of the contract.

There are at least two major problems with this portion of the Board's order. First both parties are in agreement (and the Board so finds in effect) that the pre-strike "agreement" on certain contract terms was contingent upon the resolution of the other unresolved major issues. Hence, at that point there clearly was no *H. J. Heinz* type violation (*H. J. Heinz v. NLRB,* 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 (1941)).

Second, we do not find (and do not think the Board did) a legally *enforceable* agreement on September 18, 1975. Leaving aside the questions of DeBruin's intention (and authority[2]) orally to bind Respondent to

---

**2.** Although the ALJ found that DeBruin "had real, as well as apparent, authority to bind the Respondent when he met with Hennigin on September 18," there is no evidence in the record to support this finding. In fact, De-

Bruin's uncontradicted testimony at the hearing was that he informed Hennigin, at the beginning of the negotiations in January, that "anything [he] agreed to was tentative subject to the approval of the Board of Trustees."

accept Hennigin's offer to accept any proposals that might be made as to unresolved issues, there is the question of Hennigin's legal authority to make any such commitment and the Board's and this court's authority to enforce it.

As Congress has drafted the National Labor Relations Act and the Supreme Court has interpreted it, the National Labor Relations Board is empowered to lead the horses to water but it can't make them drink.[3]

In the *H. J. Heinz* case, *supra*, the Supreme Court made clear that the Board could compel the signing of a written contract after an agreement on its terms had been reached by the parties. But it also has made clear that the Board cannot compel either party to propose or accept substantive terms of the contract. In one of the fundamental cases dealing with this problem, the Court stated:

It is apparent from the legislative history of the whole Act that the policy of Congress is to impose a mutual duty upon the parties to confer in good faith with a desire to reach agreement, in the belief that such an approach from both sides of the table promotes the over-all design of achieving industrial peace. See *Labor Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893. Discussion conducted under that standard of good faith may narrow the issues, making the real demands of the parties clearer to each other, and perhaps to themselves, and may encourage an attitude of settlement through give and take. The mainstream of cases before the Board and in the courts reviewing its orders, under the provisions fixing the duty to bargain collectively, is concerned with insuring that the parties approach the bargaining table with this attitude. But apart from this essential standard of

conduct, Congress intended that the parties should have wide latitude in their negotiations, unrestricted by any governmental power to regulate the substantive solution of their differences. See *Teamsters Union v. Oliver*, 358 U.S. 283, 295, 79 S.Ct. 297, 3 L.Ed.2d 312.

*NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 488, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

The Court stated the rule succinctly in *H. K. Porter Co. v. NLRB,* 397 U.S. 99, 102, 90 S.Ct. 821, 823, 25 L.Ed.2d 146 (1969):

[W]e hold that while the Board does have power under the National Labor Relations Act, 61 Stat. 136, as amended, to require employers and employees to negotiate, it is without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement.

The Board recognizes that such pre-strike agreements as had been reached in this case were subject to change. As a consequence, the Board has not ordered the company to draft and sign any contract based upon the collective bargaining posture as of that date. The Board does, however, base its order on the conference between Hennigin and DeBruin on September 18. However, on that date, the most that can be said is that the two negotiators arrived at an agreement that DeBruin would submit a draft of proposals on the 10 important issues over which the strike had happened and that Hennigin undertook to commit the union to accept whatever the Home proposed.

It seems obvious to us that this commitment on Hennigin's part arose from the weakness of the Union's bargaining position after it had lost the strike and that it was

---

**3.** Section 8(d) of the Act, 29 U.S.C. § 158(d) (1976), states in pertinent part:

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an

agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, *but such obligation does not compel either party to agree to a proposal or require the making of a concession . . . .* (Emphasis added.)

more related to his desire to see that the union retained collective bargaining rights than to the proper discharge of his responsibilities to represent the employees under the collective bargaining rights which the union had previously won. One of the issues as to which Hennigin's undertaking applied, if it be accepted at face value, was wages. It seems obvious that if the Home had come back with a proposal for a substantial wage cut, Hennigin's signature on such a contract might well be successfully challenged in a suit by individual employees against the union for unfair representation. We believe that recognition of this problem led the Board to write its order in unilateral language imposing the duty upon the Home to carry out the "settlement" by proposing terms on the 10 unresolved issues but requiring it to sign only if the union agreed to its proposal. Thus the union was left free to reject what the Board urges us to consider a settlement already agreed on by both parties. Clearly for there to be an enforceable agreement, both sides must be committed to its terms.

If indeed there was a settlement as to which the *H. J. Heinz* doctrine could apply, in our view, it would be one to which both sides were bound in all respects except the actual signing of a written contract.

Under these circumstances, we grant enforcement of the Board's order with the exception of paragraph "a" previously quoted on page 765 of this opinion. We also remand this proceeding to the Board but only for the purpose of considering a substitute remedy such as an order for continuation of collective bargaining in lieu of paragraph "a" to which we refuse enforcement. Enforcement of the Board's order is granted as limited above and the case is remanded for the purpose stated.